**Cara Leslie ALEXANDER, et al., Plaintiffs,**

**v.**

**FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.**

Nos. CIV. 96–2123(RCL), CIV. 97–1288(RCL).

United States District Court, District of Columbia.

Dec. 13, 2000.

---

Larry Klayman, Klayman & Associates, PC, Washington, DC, for Plaintiff.

Williams & Connolly, Washington, DC, for William Jefferson Clinton, Intervenor.

U.S. Department of Justice, Washington, DC, for FBI and Executive Office of the President, Defendants.

Richard Oparil, Piper Marbury Rudnick & Wolfe, LLP, Washington, DC, for Northrop Grumman Corporation, Intervenor.

**1.** Document No. 15 in the Piper Marbury privilege log has already been produced, pursuant to an order of this Court on October 12, 2000. It is

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This Court entered an order on July 10, 2000, directing that an evidentiary hearing would be held to determine the best way to restore and search non-archived emails not produced in this case. A subsequent evidentiary hearing was ordered on July 20, 2000 to determine the extent and circumstances of non-disclosure of requested email documents in the underlying case. Plaintiffs had filed substantial evidence with this Court revealing the existence of an email problem, additional evidence that the defendants had provided false statements to this court about the missing emails, and evidence of an effort to obstruct justice through threats and intimidation of witnesses to the email problem. During the course of the evidentiary hearing, questions arose regarding the applicability of attorney-client privilege to certain documents and testimony sought by the plaintiffs. The Court has recessed the evidentiary hearing to determine the extent of the attorney-client privilege in this situation.

This matter comes before the Court upon application by Intervenor Northrop Grumman Corporation ("Northrop Grumman") and Nonparty Witness Piper Marbury Rudnick and Wolfe ("Piper Marbury"). On October 16, 2000, Nonparty Northrop Grumman filed a Memorandum in Support of Assertion of Attorney–Client Privilege and Work Product. Northrop Grumman and Piper Marbury, on Northrop Grumman's behalf, assert that the documents (Nos. 1–18)[1] submitted to the Court in Piper Marbury's privilege log of October 5, 2000 should not be disclosed to the plaintiffs in this case.

Northrop Grumman has also submitted two other privilege logs, one from the files of in-house counsel H. Lowell Brown ("Brown privilege log"), the other from the files of in-house counsel Ralph Pope ("Pope privilege log"). These additional privilege logs were provided on November 13, 2000, in conjunction with Northrop Grumman's response to

therefore not addressed here by the parties or the Court.

this Court's interrogatory as to whether Northrop Grumman had any information indicating that the White House Counsel's Office was aware of the alleged threats to Northrop Grumman employees before January, 2000.

## I.  Background

The underlying allegations in this case arise from what has become popularly known as "Filegate." Plaintiffs allege that their privacy interests were violated when the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees under the Reagan and Bush Administrations.

During the course of this litigation, it has come to light that a large amount of electronic mail within the White House computer system was not records managed, and thus, the data was not searched for responsive documents when the White House responded to subpoenas. The contractor who was responsible for maintaining the computer system for the Executive Office of the President ("EOP"), Northrop Grumman, has been subpoenaed and its employees questioned in relation to when this computer error was discovered, and when the problem was disclosed to the White House Counsel's Office and other bodies.

The current dispute revolves around whether the attorney-client privilege and/or the work product doctrine apply to documents held by Piper Marbury, outside counsel for Northrop Grumman, the White House contractor responsible for the computer systems of the EOP. Plaintiffs allege that the documents included in Piper Marbury's privilege log should be disclosed, while Piper Marbury and Northrop Grumman assert the attorney-client privilege and/or work product doctrine apply to these documents. A similar dispute covers the documents listed in the Brown and Pope privilege logs submitted by Northrop Grumman. Plaintiffs argue that these documents are not within the scope of the attorney client or work product privileges, while Northrop Grumman and Piper Marbury assert both privileges for each document listed on the Brown and Pope privilege logs.

The Court will also address the dispute regarding the testimonial privilege asserted by Northrop Grumman employees and Northrop Grumman. The assertion of the attorney-client privilege has severely inhibited the evidentiary process before this Court. Plaintiffs allege that the attorney-client privilege doesn't apply to various conversations and meetings between Northrop Grumman employees and Northrop Grumman counsel on the basis of waiver, the crime-fraud exception, and other theories. Northrop Grumman and its employees argue that the attorney-client privilege should be liberally interpreted and applied in these circumstances.

## II.  Attorney–Client Privilege

### A.  Purpose

█  In determining whether the attorney-client privilege applies to the remaining seventeen documents included in Piper Marbury's Privilege Log, the Court must evaluate the purpose of the attorney-client privilege and the extent to which the privilege has been held to apply in other cases. "The attorney-client privilege exists to protect confidential communication, to assure the client that any statements he makes in seeking legal advice will be kept strictly confidential between him and his attorney; in effect, to protect the attorney-client relationship." *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C.Cir.1980). The attorney-client privilege must protect "a client's disclosures to an attorney," and "the federal courts extend the privilege also to an attorney's ... communications to a client, to ensure against inadvertent disclosure, either directly or by implication, of information which the client has previously confided to the attorney's trust." *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 862 (D.C.Cir.1980).[2] A document is protected by the attorney-client privilege if confidential attorney-client communications are revealed, and those communications were made in order to obtain or deliver

---

**2.** It is important to recognize that this rationale for the attorney-client privilege is inapplicable

where an attorney is conveying to the client communications made to or by a third party.

legal assistance. *See In re Sealed Case,* 737 F.2d 94, 98–99 (D.C.Cir.1984); *Alexander v. FBI,* 186 F.R.D. 154, 161 (D.D.C.1999).

■ The attorney-client privilege, and the purpose of the privilege, apply to corporations as well as individuals. "Both for corporations and individuals, the attorney-client privilege serves the function of promoting full and frank communications between attorneys and their clients. It thereby encourages observance of the law and aids in the administration of justice." *Commodity Futures Trading Commission v. Weintraub,* 471 U.S. 343, 348, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985).

The Court of Appeals for the District of Columbia Circuit has stated that the attorney-client privilege only applies when:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *In re Sealed Case,* 737 F.2d 94, 98–99 (D.C.Cir.1984).

In evaluating the Piper Marbury privilege log, it is clear that Northrop Grumman was the client of Piper Marbury, and more specifically, the client of Earl J. Silbert, Esq. The seventeen items remaining in the Piper Marbury privilege log are the results of communications between Northrop Grumman representatives and Mr. Silbert.

Piper Marbury, through the Declaration of Richard J. Oparil of October 23, 2000, indicates that the communications related to the entries in the Piper Marbury privilege log were not made in the presence of strangers. It is evident from the context of these communications, the testimony of Mr. Silbert

before this Court and additional materials produced in this case that the primary purpose of these communications was to seek legal advice. It is also evident that Northrop Grumman was not seeking to commit a crime or a tort when it sought legal advice from Mr. Silbert.[3]

Finally, the last requirement of the attorney-client privilege test established by the D.C. Circuit Court of Appeals in *In re Sealed Case,* has been met in this case. The attorney-client privilege has been claimed by Northrop Grumman and by Piper Marbury on Northrop Grumman's behalf.

### B. Crime Fraud Exception

■ In order for the crime-fraud exception to apply, the plaintiffs would have to show two things, that Northrop Grumman participated in a crime or fraud, and that Northrop Grumman consulted with counsel for the purpose of furthering a crime or fraud. The party seeking to show that the crime fraud exception applies "must offer 'evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud.' ... [and] that 'the client consulted the lawyer for the purpose of committing a crime or fraud.'" *In re Sealed Case,* 107 F.3d 46, 50–51 (D.C.Cir. 1997), *quoting In re Sealed Case,* 754 F.2d 395, 399 (D.C.Cir.1985).

The most likely crime that Northrop Grumman could be alleged to have committed is obstruction of justice. 18 U.S.C. § 1505 provides the relevant obstruction statute,

> "Whoever corruptly ['acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information'] ... influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry under which

---

**3.** The crime-fraud exception to attorney-client

privilege will be addressed in more detail below.

any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress –

Shall be fined under this title or imprisoned not more than five years, or both" 18 U.S.C. § 1505. (quoting definition of corruptly from 18 U.S.C. § 1515(b)).

Although plaintiffs have alleged criminal activity by the EOP in evading subpoenas, plaintiffs have not provided sufficient evidence of affirmative participation in criminal activity by Northrop Grumman. Plaintiffs have alleged that the EOP has committed various crimes; plaintiffs then allege that EOP criminal activity was assisted by Northrop Grumman. Even assuming that there is a showing that EOP obstructed justice, plaintiffs have not shown that Northrop Grumman is an accessory after the fact to obstruction of justice.

■■■ In order to show that Northrop Grumman was an accessory after the fact, the plaintiffs must show that Northrop Grumman had actual knowledge that a crime had been committed and that the EOP had committed a crime. *See, e.g., United States v. Mills,* 597 F.2d 693, 696 (9th Cir.1979); *United States v. Bissonette,* 586 F.2d 73, 76 (8th Cir.1978). The court in *Butler v. United States* also held that actual knowledge on the part of the alleged accessory must be proven, in addition that the accessory acted or assisted the principal with the specific intent to help the principal evade apprehension or punishment. 481 A.2d 431, 443–44 (D.C. 1984), *cert. denied,* 470 U.S. 1029, 105 S.Ct. 1398, 84 L.Ed.2d 786 (1985). Plaintiffs have not provided any evidence to show that Northrop Grumman had any corporate knowledge of the specifications of outstanding subpoenas or document requests in the fall of 1998. Nor do plaintiffs show that Northrop Grumman took any *affirmative* steps to conceal any facts regarding the alleged threats to Northrop Grumman employees. While plaintiffs assert that the alleged threats to Northrop Grumman employees resulted in an obstruction of justice by the EOP, there are no allegations or evidence that Northrop Grumman operated to prevent the dissemination of any documents or information that had been subpoenaed.

Plaintiffs do not allege any affirmative acts of concealment by Northrop Grumman. There is no evidence that Northrop Grumman actively engaged in obstruction of justice or that Northrop Grumman affirmatively participated in other criminal actions in relation to the failure of the White House to turn over responsive documents to various entities that had issued subpoenas to the EOP. Northrop Grumman may well have been aware of criminal activity by the EOP, but there is no evidence of any affirmative criminal activity conducted by Northrop Grumman or its employees.

Plaintiffs have failed to meet the first or the second requirements of the crime-fraud exception. Plaintiffs have not shown that Northrop Grumman consulted counsel for the purpose of committing a crime or fraud. Even if the Court were to accept for the sake of argument that Northrop Grumman had participated in a crime or a fraud, there is no evidence whatsoever to show that Northrop Grumman consulted with Earl Silbert for the purpose of furthering that crime or fraud. Corporations consult with counsel for a variety of reasons. Even if Northrop Grumman had been participating in criminal activity, it may have consulted with Earl Silbert regarding contract issues, personnel concerns, or because Northrop Grumman wanted to find the best way of discontinuing its participation in any potentially criminal or fraudulent activity. Plaintiffs have not carried their burden of showing that the crime-fraud exception applies to the attorney-client privilege claimed by Northrop Grumman and Piper Marbury. *See In re Sealed Case,* 107 F.3d 46, 49 (D.C.Cir.1997); *Alexander v. FBI,* 192 F.R.D. 32, 36 (D.D.C.2000); *Alexander v. FBI,* 186 F.R.D. 154, 162 (D.D.C.1999).

C. Application of Analysis to Privilege Logs

The analysis above indicates that the seventeen remaining items in the Piper Marbury Privilege Log should remain confidential unless the attorney-client privilege has been waived and the work product privilege does not apply. The attorney-client privilege

of Northrop Grumman has not been waived with regards to items 1–10 and 12–14.[4] These documents were produced in the Piper Marbury privilege log but were not created in the presence of strangers or disclosed to anyone other than the Court, representatives of Piper Marbury, or representatives of Northrop Grumman. *See Declaration of Richard J. Oparil.* There is no indication that either Piper Marbury or Northrop Grumman have waived the attorney-client privilege before this Court or Congress.[5]

■ Items 7–9 in the Piper Marbury privilege log are drafts of a letter that was subsequently sent to a third-party. The final letter is not protected by attorney-client confidentiality because it was disclosed to third parties. Plaintiffs argue that the release of the final draft waives the attorney-client privilege as it applies to prior drafts of the document. Drafts of documents that are prepared with the assistance of counsel for release to a third party are protected under attorney-client privilege. *See Alexander v. FBI*, 186 F.R.D. 154, 162 (D.D.C.1999). *See also Neuder v. Battelle Pacific Northwest National Lab.*, 194 F.R.D. 289, 296 (D.D.C. 2000) (attorney's comments on a draft document are privileged).

■ The billing entries, items 16–18 in the Piper Marbury privilege log, were similarly created and maintained in a secure environment. *See Declaration of Richard J. Oparil.* The argument could be made that the Piper Marbury privilege log was so generous as to waive the privilege as to the billing entries. The redacted billing entries provided by Piper Marbury in reference to other subpoenas are far less informative than those provided in the Piper Marbury privilege log. The Court, however, does not find that the privilege has been waived as to the billing entries.

It is in the interests of justice that privilege logs inform the requestor of the character of the information being withheld from him or her. The Piper Marbury privilege log does just that, allowing the plaintiffs in this case to understand the characteristics of the information being withheld from them and formulate legal arguments for why the information should be provided to them. This is the purpose of a privilege log, and it would be unfortunate to undermine that purpose by finding a waiver of the attorney-client privilege with regards to items 16–18 in the Piper Marbury privilege log.

■ The analysis applied above to the entries in Piper Marbury's privilege log similarly applies to many of the entries in the Pope and Brown privilege logs. Returning to the factors established in *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C.Cir.1984), it is clear that the documents are protected by the attorney-client privilege. Northrop Grumman is the client of in-house counsel Lowell Brown and Ralph Pope. Both Pope and Brown are attorneys who were acting as legal counsel when these communications were made. The communications at issue were related to information Brown and Pope learned from their client. These communications were not transmitted to strangers. The context of these communications and additional materials produced in this case indicate that these communications were made for the primary purpose of receiving legal advice or assistance. There is no indication that the communications were made for the purpose of committing a crime or a tort. The client, Northrop Grumman, is claiming the attorney-client privilege and has not waived the privilege as it applies to these documents.

The first three items in the Brown privilege log are client communications with outside counsel for the purpose of seeking legal advice. They correspond to similar documents listed in the Piper Marbury privilege log, and they are protected from disclosure. Items 4–7 of the Brown privilege log include fax cover sheets and draft copies of a letter that was ultimately signed by Joseph Lucente and released to third parties. The fax

---

4. Item no. 11 in the Piper Marbury privilege log will be addressed separately from the other portions of the Piper Marbury log, in order to adequately examine the possible issue of waiver of the attorney-client privilege by Northrop Grumman employees.

5. The issue of waiver of attorney-client privilege will be addressed more fully below.

cover sheets include attorney-client communications and are privileged, as has been held above. The draft copies of the letter in Mr. Brown's files are the counterparts to draft letters in Piper Marbury's privilege log; these drafts are privileged under the same analysis used above. Items 8–9 are fax cover sheets with typed notes and are communications with counsel or clients from the in-house counsel's office at Northrop Grumman. They are privileged as are similar documents discussed previously in this opinion. Item 10 of the Brown privilege log will be addressed below, in conjunction with item no. 11 from the Piper Marbury privilege log.

The Pope privilege log includes several fax cover sheets that are protected under the attorney-client privilege as attorney-client communications, item nos. 1, 5, and 9. The Pope privilege log also includes a message regarding the EOP email matter (item no. 3), memoranda relating to subpoenas received by Northrop Grumman (item nos. 2 and 6), and memoranda regarding media coverage, testimony in *Alexander v. FBI,* and the status of the matter being handled by outside counsel (item nos. 4, 7, and 8). All of these items meet the necessary elements for being considered as confidential attorney-client communications. *See In re Sealed Case,* 737 F.2d at 98–99. They need not be produced to plaintiffs.

## III.  Work Product Doctrine

■ The issue of waiver of the attorney-client privilege, as it applies to item No. 11 in the Piper Marbury privilege log, and item No. 10 in the Brown privilege log, raises complicated issues of fact and law, therefore, the Court will address the applicability of the work product privilege first. Both documents no. 11 from the Piper Marbury privilege log and no. 10 from the Brown privilege log are notes taken by counsel at meetings with Northrop Grumman employees. Although plaintiffs argue that there may be waiver of the attorney-client privilege as it applies to these documents because of subsequent disclosures made by various non-managerial Northrop Grumman employees, such as Bob Haas and Joseph Lucente, the Court

finds it unnecessary to analyze the waiver issue with respect to these documents.

■ The work product privilege applies to materials obtained or prepared by counsel in the anticipation of litigation. "The work product privilege, 'distinct from and broader than the attorney-client privilege,' *United States v. Nobles,* 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), exempts from discovery documents prepared by an attorney in contemplation of litigation." *Moody v. Internal Revenue Service,* 654 F.2d 795, 798–99 (D.C.Cir.1981).

The notes made by an attorney from communications with a client or with the representatives of a client are protected under the work product doctrine. *See In re Sealed Case,* 29 F.3d 715, 718 (D.C.Cir.1994). Here the notes taken by counsel reflect their understanding of issues raised by representatives of the client. This type of mental impression, gleaned from client and witness interviews, have been held to be protected under the work product doctrine. *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

■ Factual work product must be distinguished from opinion work product. While fact-based work product may be discoverable upon a sufficient showing of need for the information and its unavailability from any other source, opinion work product is entitled to greater protection. *See, e.g. American Tel. & Tel. Co.,* 642 F.2d at 1302; *Blumenthal v. Drudge,* 186 F.R.D. 236, 241 (D.D.C.1999).

Opinion work product includes notes, legal memoranda, and other materials that taken from client and witness interviews reveal the mental processes of the attorney. "Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." *Upjohn Co. v. United States,* 449 U.S., at 399, 101 S.Ct. 677. Documents that reveal an attorney's mental processes in "evaluating the communications" with a client are entitled to heightened protection—"such work product cannot be dis-

closed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship." *Id.* at 401, 101 S.Ct. 677. Piper Marbury privilege log nos. 1, 10, and 11, and Brown privilege log no. 10, fall squarely within the category of documents that the Supreme Court discussed in *Upjohn.* To release those documents would necessarily reveal the mental processes of the attorney. This type of opinion work product is not discoverable.

The Supreme Court has addressed the work product issue as it applies to witness interviews by attorneys in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The Supreme Court held that the notes taken by an attorney in his communications with employees of his client company, in anticipation of litigation, should not be disclosed. *See id.* This Circuit has also addressed the work product doctrine, *In re Sealed Case,* the D.C. Circuit held that "as the work product sought here is based on oral statements from witnesses, a far stronger showing is required than the 'substantial need' and 'without undue hardship' standard applicable to discovery of work-product protected documents and other tangible things." 856 F.2d 268, 273 (D.C.Cir.1988).

Finally, the words of the Supreme Court in *Upjohn,* citing *Hickman v. Taylor,* are directly on point. The Court "did not believe that any showing of necessity can be made under the circumstance of this case so as to justify production [of 'oral statements made by witnesses ... presently in the form of [the attorney's] mental impressions or memoranda.'] ... If there should be a rare situation justifying production of these matters petitioner's case is not of that type." *Upjohn* 449 U.S. at 399, 101 S.Ct. 677. The Court finds that these documents and their surrounding circumstances do not provide the rare situation where production of an attorney's mental impressions would be appropriate.

Because the Court finds that Piper Marbury privilege log document no. 11 and Brown privilege log no. 10 are protected under the work product privilege, it is unnecessary to address whether the attorney-client privilege, as it applies to these documents, has been waived by subsequent actions of Northrop Grumman employees.

## IV. Waiver

■ Although waiver is not an issue as it applies to the documents addressed above, waiver is very important as it applies to challenges to the attorney-client privilege asserted in relation to testimony before this Court. Plaintiffs assert that Northrop Grumman employees were not properly seeking legal advice in the course of their employment and that any confidences made by Northrop Grumman employees to in-house or outside counsel are not privileged. Plaintiffs are mistaken in their application of the attorney-client privilege to a corporate setting. In *Upjohn Co. v. United States,* the Supreme Court made it very clear that communications with counsel by corporate employees are privileged, so long as "[t]he communications concerned matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice." *Upjohn Co.,* 449 U.S. at 394, 101 S.Ct. 677. Although plaintiffs argue otherwise, it is clear to the Court that these employees were acting within the scope of their employment when they sought legal advice from in-house counsel and then outside counsel. It is also evident that the employees were aware that Northrop Grumman was seeking to obtain legal advice regarding its contractual obligations on the basis of the information that the employees were providing to Northrop Grumman counsel. The employees' communications with counsel are protected by the attorney-client privilege.

■ Plaintiffs further allege that even if attorney-client privilege applies, it has been waived by subsequent disclosures by those same Northrop Grumman employees. First of all, it should be noted that no waiver of Northrop Grumman's attorney-client privilege occurred at the hearing of the House Government Reform Committee, held on March 23, 2000. *See transcript of hearing of the House Government Reform Committee.* The members of that Committee did not ask Northrop Grumman employees about their

discussions with Northrop Grumman in-house or outside counsel. Plaintiffs are mistaken if they believe communications by Northrop Grumman employees regarding the underlying facts of the email problem at EOP and threats made to Northrop Grumman employees waive attorney-client privilege of later meetings where these facts may have been discussed with counsel.

■ Another issue that arises when considering waiver of the attorney-client privilege is whether a subsequent letter by Joseph Lucente, a Northrop Grumman employee, who was present at the September 9, 1998 meeting between counsel and Northrop Grumman employees who disclosed threats by White House employees, waives the attorney-client privilege as it applies to that meeting. It cannot be the law that a subsequent letter, inspired by confidential communications but not revealing any confidential information, would waive the privilege as it applies to a meeting with counsel. If that were the case, attorneys would never be able to disclose any part of a conversation with their clients without waiving the privilege as it applies to the attorney-client conversation in its entirety.

Joseph Lucente, an employee of Northrop Grumman acting at the direction of counsel, wrote the letter to the EOP regarding concerns that Northrop Grumman had regarding the Northrop Grumman, EOP contract. *See Lucente letter of September 14, 1998.* This letter included a disclosure of the EOP email problem that Northrop Grumman employees had been attempting to evaluate. Plaintiffs assert that the confidential discussion of the EOP email problem, as well as the disclosure of alleged threats made to Northrop Grumman employees by White House employees, were the impetus for Lucente writing a letter to the EOP. Plaintiffs further argue that because the disclosures that inspired the letter occurred in a meeting between counsel and Northrop Grumman employees, attorney-client privilege is waived as to that meeting. Whatever inspired Nor-

throp Grumman counsel and Joseph Lucente to write the letter to the EOP, the letter does not reveal confidential attorney-client communications. Rather, the letter describes a problem with the email system of the White House and indicates that the correction of that problem is likely beyond the scope of the Northrop Grumman contract with EOP for computer services. The letter also alleges that Northrop Grumman employees were directed by White House personnel to remedy the problem without the guidance of Northrop Grumman management. The Court finds that the attorney-client privilege has not been waived as a result of the Lucente letter.

■ Even if a lower level Northrop Grumman employee had discussed communications with Northrop Grumman counsel with third parties, the case law indicates that such a disclosure would not have waived Northrop Grumman's attorney-client privilege.[6] Plaintiffs allege that Joseph Lucente testified before the staff of the House Committee on Government Reform on May 1, 2000 and that he waived any privilege for communications at the September 9, 1998 meeting between Northrop Grumman counsel and employees. Lucente is not part of the "control group" at Northrop Grumman, he does not have the power to waive the attorney-client privilege on behalf of Northrop Grumman. As the Supreme Court has noted, "the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 348–49, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). Hence, "a corporate employee cannot waive the corporation's privilege." *United States v. Chen,* 99 F.3d 1495, 1502 (9th Cir.1996), *cert. denied,* 520 U.S. 1167, 117 S.Ct. 1429, 137 L.Ed.2d 538 (1997); *In re Claus von Bulow,* 828 F.2d 94, 100–01 (2d Cir.1987). Although the plaintiffs are correct that a party cannot disclose privileged information

---

**6.** This same rationale would likely not apply if the Lucente letter were found to be a waiver of attorney-client privilege on the grounds that Northrop Grumman counsel reviewed and approved the letter that was sent to the White House. This

participation by counsel indicates that the employee was authorized to speak on this matter and therefore, under the *Upjohn* analysis, the privilege would be found to have been waived by Northrop Grumman.

without waiving the attorney-client privilege,[7] the holder of the privilege, Northrop Grumman, an intervenor in this case, did not disclose privileged information. Nor is there any indication that Northrop Grumman officers and directors, the holders of the privilege, authorized Mr. Lucente to waive Northrop Grumman's attorney-client privilege when he testified before various bodies.

Although the Court finds that Northrop Grumman employee Bob Haas did not disclose privileged information, it is possible that his co-worker, Joseph Lucente, did reveal privileged information before the House Committee staff members. The testimony that Mr. Lucente gave before the House Committee Staff does not constitute waiver of Northrop Grumman's attorney-client privilege because of his position within Northrop Grumman. It is also relevant that Mr. Lucente, an otherwise cooperative witness before this Court, indicated that he did not recall making statements attributed to him by the House Committee Report. *See transcript of Lucente's testimony in Alexander v. FBI,* p. 87 (November 1, 2000). No transcript of Mr. Lucente's testimony before the House Committee was ever submitted to this Court. Discussions among Northrop Grumman employees likewise do not waive the privilege held by their employer. Northrop Grumman has consistently asserted its claim to attorney-client privilege; Northrop Grumman has not waived attorney-client privilege.

Further assertions by plaintiffs of waiver on the basis of unsubstantiated rumors of phone calls from Northrop Grumman's headquarters to the White House in September of 1998 are not sufficient to show that there has been a waiver of attorney-client privilege with regards to the meetings held between Northrop Grumman employees and Northrop Grumman counsel. *See Plaintiffs' Supplemental Memorandum Regarding Northrop Grumman Corp.'s Assertion of the Attorney–Client Privilege pp. 7–8.*

## V. Testimonial Privilege

### A. Attorney–Client Privilege

One of the most hotly contested issues of these evidentiary hearings has been the extent to which the attorney-client privilege applies to the testimony of various Northrop Grumman employees and outside Northrop Grumman counsel Earl Silbert. Counsel for the Northrop Grumman employees have asserted the attorney-client privilege on behalf of their clients and Northrop Grumman at every opportunity. Further evidentiary hearings would be a waste of this Court's resources if these assertions of attorney-client privilege are upheld as valid. Therefore, the Court will address the validity of these claims of privilege at this time.

The Court asked Northrop Grumman, and its outside counsel, Piper Marbury, to respond to the question, "Does Northrop Grumman have any information that the White House Counsel's Office was aware of the alleged threats to Northrop Grumman employees before January 2000?" Richard Oparil, Esq., of Piper Marbury, outside counsel for Northrop Grumman, provided the responses of Piper Marbury and Northrop Grumman to the Court on November 13, 2000. The Answers lodged with the Court at the hearing and provided to the plaintiffs on that same date shall be filed in this case. *See Part VI infra.*

Northrop Grumman, in its Answer, responded equivocally that it did not have any information to show that the White House Counsel's Office was aware of the alleged threats made to Northrop Grumman employees prior to March 2000. *See Northrop Grumman Answer to Interrogatory Posed by the Court* (November 13, 2000). Piper Marbury responded on Northrop Grumman's behalf that the only way to "fully answer the Court's question would be to reveal attorney-client privileged communications and attorney work product." *See Piper Marbury letter from November 13, 2000.* Perhaps the Court should have phrased the question differently and asked what Earl Silbert told the White House Counsel's Office in 1998 regarding the email problem described in the September 14, 1998 Lucente letter and the alleged threats made to Northrop Grumman employees.

---

7. *See Marshall v. United States Postal Service,* 88 F.R.D. 348, 350 (D.D.C.1980).

Earl Silbert has indicated that he does not recall having a conversation with the White House Counsel's Office on the issue of threats to Northrop Grumman employees by White House employees. Mr. Silbert testified before this Court that he did not review Northrop Grumman's client file because he did not want to waive attorney-client privilege as to the documents in that file. He indicated that he understood the law of this jurisdiction to allow the adverse party access to materials used to refresh the memory of witnesses, even if those materials were covered by the attorney-client privilege. Federal Rule of Evidence 612(b) does allow for writings used to refresh memory to be produced to the adverse party at the discretion of the court. The Court addresses the application of Rule 612 to this case *infra*, and finds that Mr. Silbert may review Piper Marbury's file on Northrop Grumman before testifying again before this Court without subjecting attorney-client privileged materials to disclosure.[8] Perhaps a review of his client file would refresh his recollection as to communications he had with the White House Counsel's Office.

■ There may also be other memorializations of Silbert's conversation with the White House Counsel's Office. The Piper Marbury, Brown and Pope privilege logs all indicate that Earl Silbert communicated on a regular basis with Messrs. Pope and Brown about different issues associated with Silbert's representation of Northrop Grumman in this matter. Any conversation between counsel to Northrop Grumman and White House Counsel would not be protected by the attorney-client privilege. Any disclosures that Earl Silbert made to the White House Counsel's Office would have been communications with a third party, and thus not privileged; this is true even if those communications were later transmitted to Messrs. Brown or Pope at Northrop Grumman.

The application of the elements in *In re Sealed Case*, 737 F.2d at 98–99, indicates that the information Silbert would have communicated to Northrop Grumman in-house counsel regarding his conversations with the White House Counsel's Office would not be protected by the attorney-client privilege. Although the first two requirements of *In re Sealed Case* are met, passing along information regarding a conversation with a third party would not meet the requirement that "(3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding ..." *In re Sealed Case*, 737 F.2d at 98–99. Although it can be argued that the communication relates to facts that the attorney learned from his client, it cannot be said, by any stretch of the imagination, that the attorney learned of the facts plaintiffs are pursuing without the presence of strangers. The very facts the plaintiffs seek were disclosed in the presence of strangers, namely, the White House Counsel's Office. Whatever communications Earl Silbert had with the White House Counsel's Office, merely conveying them back to his client would not make those communications privileged under the attorney-client privilege law of this jurisdiction. "[W]hen an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *Brinton v. Department of State*, 636 F.2d 600, 604 (D.C.Cir.1980) (footnote omitted), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981).

In order to show that the attorney-client privilege would in fact apply to the testimony the plaintiffs are requesting, Northrop Grumman would have to present the Court with sufficient facts to establish the attorney-client privilege would apply. Northrop Grumman must demonstrate with reasonable certainty that the lawyer's communication "rested in significant and inseparable part on the client's confidential disclosure." *In re Sealed Case*, 737 F.2d at 99. *See also Brinton*, 636 F.2d at 603–04; *Federal Trade Commission v. TRW, Inc.*, 628 F.2d 207, 213 (D.C.Cir.1980); *Mead Data Central, Inc. v.*

---

8. The Court is confident that Mr. Silbert's knowledge of the rules applying to attorney-client privilege will prevent him from accidentally disclosing attorney-client privileged materials on the witness stand, even after he reviews his client file.

*United States Department of Air Force,* 566 F.2d 242, 254 (D.C.Cir.1977).

The underlying question here is whether the White House Counsel's Office was aware of the threats to Northrop Grumman employees by White House employees. The companion question, whether the White House Counsel's Office was aware of the email problem discovered by Northrop Grumman employees, is answered in part by the Lucente letter from September 14, 1998.

The only way to discover the response to the unanswered question above is to question Mr. Silbert, after review of his client files and the files of Ralph Pope and Lowell Brown; and to question in-house counsel to Northrop Grumman, Lowell Brown and Ralph Pope, after review of their files and Mr. Silbert's client files. If these three individuals review the documents that they have submitted to this Court *in camera* and the other documents in their files responsive to subpoenas in this case, they may refresh their recollections as to what Mr. Silbert told the White House in 1998 with regard to the issues before this Court.

■ The attorney-client privilege "[a]pplies only where necessary to achieve its purpose. Accordingly, it protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). In this case, if the attorney-client privilege is to be applied properly, any statements made by Earl Silbert to White House Counsel, and then passed on to Ralph Pope or Lowell Brown would not be necessary to protect disclosures made to obtain informed legal advice.

Furthermore, testimonial privileges are considered to be " 'distinctly exceptional, being so many derogations from a positive general rule.' " *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950), *quoting,* 8 J. WIGMORE, EVIDENCE §§ 2192 (3rd ed.1940). The D.C. Circuit has held that the "attorney-client privilege must be 'strictly confined within the narrowest possible limits consistent with the logic of its principle,' " *In re Lindsey* 148 F.3d 1100, 1108, *quoting In re Sealed Case,*

676 F.2d 793, 807 n. 44 (D.C.Cir.1982). The logic of the principle is that the client feel confident that the attorney-client privilege will prevent client confidences to the attorney from being revealed. Although it is clear that in many situations the communications to the client by the attorney might reveal client confidences, this is not one of those situations. Any client confidences that might be revealed by the inquiry into what Earl Silbert told the White House Counsel's Office about the threats made to Northrop Grumman employees would have been likewise revealed to the White House Counsel's Office. If any client communications were thus revealed to a third party, there would be no attorney-client privilege that applied to those communications; the privilege would have been destroyed by the disclosure to the third party.

The Supreme Court has made clear that "an asserted privilege must also 'serv[e] public ends' " as opposed to merely serving the interests of the party who seeks to conceal relevant evidence. *Jaffee v. Redmond,* 518 U.S. 1, 11, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), *quoting Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The interests of the public would not be served by refusing to allow inquiry into what was said to the White House Counsel's Office. Investigations into the alleged threats made to Northrop Grumman employees by White House employees have taken too much time and energy on many fronts to allow trumped up assertions of attorney-client privilege to prevail on this issue.

The decision that this Court makes today should not be read to allow for a full inquiry into communications made by Earl Silbert to in-house Northrop Grumman counsel. Said inquiry should remain strictly limited to the contents of Mr. Silbert's communications with the White House Counsel's Office. This restriction will prevent any intrusion into matters that are properly considered to be protected by the attorney-client privilege.

**B. Work Product Doctrine**

■ While the attorney-client privilege clearly would not apply to a conversation

between Earl Silbert and the White House Counsel's Office, the work product doctrine might cover these communications. Here, Earl Silbert's work product was implicated. He made a call to the White House Counsel's Office and then memorialized his conversation by reporting back to his client, Northrop Grumman. Factual work product is discoverable under a showing of substantial need and the unavailability of the information from other sources. That burden has been met here by the plaintiffs.

The applicability of the work product doctrine might best be shown by analyzing what protections would have applied to a memorialization of this conversation in another form. If Earl Silbert had taken notes of his conversation with the White House Counsel's Office, those notes would not have been protected by the attorney-client privilege, although they may have been protected by the work product doctrine. The same analysis applies to a memorialization of the conversation by other means. While the work product doctrine might apply, it would be factual work product, not opinion work product, that would apply to these documents.

Opinion work product, discussed more extensively above, covers only client interviews or interviews with potential witnesses in cases where litigation is pending. The conversation with the White House Counsel's Office was neither with a client nor a witness, but with a third party, potentially opposing counsel in a contract dispute. Thus, the opinion work product doctrine would not apply. This conversation, memorialized in notes or another form, would be protected under the fact work product standard; that standard can be overcome by a showing of substantial need for the information and the unavailability of that information from another source by the party seeking to overcome the work product protection.

Plaintiffs in this case have made a showing of substantial need for the production of such evidence, if it exists, and they have also shown that they cannot obtain this information from any other source. Unfortunately for the process of discovery, Earl Silbert did not take notes of his conversation with the White House Counsel's Office. Instead, he orally reported his conversation back to Northrop Grumman in-house counsel. Thus, the best way of discovering what information the White House Counsel's Office had in 1998 with regards to the non-archiving of emails and the alleged threats made to Northrop Grumman employees by White House employees is to question Messrs. Silbert, Brown, and Pope after a full review of the privileged documents they have submitted to this Court.

C. Evidentiary Concerns

The analysis with regards to the applicability of the attorney-client privilege to the documents in the privilege logs would be an exercise in futility if the Court were to order Messrs. Silbert, Brown, and Pope to review those same documents and testify as to their contents. Not only would the privilege be threatened by the proposed testimony, it would be undermined by Federal Rule of Evidence 612. Under that rule, "Writing Used to Refresh Memory," if a witness uses a writing to refresh memory for the purpose of testifying during the testimony, the "adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness...." FED. R. EVID. 612. If the witness uses a writing to refresh memory before testifying, the adverse party is entitled to the same privileges, "if the court in its discretion determines it is necessary in the interests of justice ..." *Id.*

After reviewing the privilege logs and documents *in camera,* considering the circumstances of this case, and recognizing that Federal Rule of Evidence 612 does apply to the testimony of Messrs. Silbert, Brown, and Pope, and to the writings they are ordered to review to refresh their memories, the Court determines that the interests of justice are better served in this case by not giving the plaintiffs access to the documents Piper Marbury and Northrop Grumman have included in their privilege logs. Messrs. Silbert, Brown, and Pope should carefully review the privileged documents submitted to this Court, but that review should be done

prior to their giving testimony. In this manner the attorney-client privilege and opinion work product doctrine will continue to apply to the documents included in the privilege logs of Piper Marbury and Northrop Grumman. Plaintiffs will have access to three witnesses who have had their memories refreshed with regards to communications with the White House in the last half of 1998, but they will not have access to attorney-client privileged documents or testimony.

### D. Hearsay

■ One obvious question that will arise when Ralph Pope and Lowell Brown are called to testify as to their memory of a conversation with Earl Silbert and what he told the White House Counsel's Office in the later part of 1998 is whether such statements would be admissible under the hearsay limitations in the Federal Rules of Evidence. The relevant rules here are Rules 803, 804 and 807. *See* FED. R. EVID. 803, 804, 807. While the exceptions to the exclusion of hearsay listed in Rules 803 and 804 do not directly apply, the Residual Exception in Rule 807 would apply to the testimony by Messrs. Pope and Brown with regard to what Earl Silbert told them he communicated to the White House Counsel's Office. Rule 807 reads in relevant part:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.... FED. R. EVID. 807

There are strong indicia of reliability and trustworthiness regarding the statement being sought. Not only were these communications made in a professional setting, they were made in the context of an ongoing professional relationship between in-house counsel for Northrop Grumman and outside counsel Earl Silbert. Messrs. Silbert, Pope, and Brown ultimately were serving the same client and trying to achieve the same goals through their representation of Northrop Grumman. The circumstantial guarantees of trustworthiness show a lack of incentive to lie, the context of the conversation would not have been conducive to telling untruths.

In order to comply with the additional requirements of Rule 807, it is necessary to evaluate whether the statement here is offered as evidence of a material fact. It is offered as evidence that the White House Counsel's Office was aware of both the email archiving problem in 1998 and that there were threats being made to Northrop Grumman employees by White House employees because of the email problem. Thus, it meets requirement (B) of rule 807. The statement sought would be much more probative on this point than any other evidence the plaintiff can procure through reasonable efforts. The plaintiffs have exhaustively searched for other evidence on this point, and it seems clear that this source is the only one that can conclusively demonstrate what the White House Counsel's Office was told in 1998 with regards to these issues.

The general purposes of these rules and the interests of justice will be much better served by admission of these statements into evidence than they would be if these statements were rejected on the basis of a formalistic reading of the hearsay rules. The restriction on hearsay statements has evolved in response to a concern that without some limitation, the declarant's reliability would never be tested. While Rules 803 and 804 allow many hearsay statements to be admissible as evidence, they are not all inclusive, and 807 has developed as a way of allowing hearsay statements to be admitted as evidence in circumstances where their reliability can be tested. Here, where there are documents that the Court has reviewed *in camera*, the ability to cross-examine Mr. Silbert as to his memory of the conversation with the White House Counsel's Office, and the contextual guarantees of trustworthiness, it would be consistent with the exceptions to the hearsay rule to allow the testimony to be admitted as evidence.

VI. Conclusion

For the reasons stated above, the Court HEREBY ORDERS that Northrop Grumman's assertion of attorney-client privilege and work product doctrine, as they apply to the seventeen remaining documents in the Piper Marbury privilege log, the nine documents in the Pope privilege log, and the ten documents in the Brown privilege log, are SUSTAINED.

Furthermore, the Court ORDERS that any Northrop Grumman employees or counsel who have knowledge of what was said by Earl Silbert, Esq. to the White House Counsel's Office testify as to that knowledge when called before this Court.

The Court ORDERS Ralph Pope, Lowell Brown, and Earl Silbert to review the documents included in the three privilege logs presented to this Court. They shall also review whatever other relevant documents are within their respective custody and control; Silbert shall review Piper Marbury's client file, Pope and Brown shall review the relevant documents held by Northrop Grumman.

The Court HEREBY sets a status conference for December 15, 2000 at 11:00 a.m., to determine when to resume the evidentiary hearing and how the evidentiary hearing will be conducted.

The Court HEREBY ORDERS that the Answers of Piper Marbury and Northrop Grumman to this Court's interrogatory, discussed *supra*, shall be filed in this case.

SO ORDERED.