## Hanover Insurance Company *vs.* Rapo & Jepsen Insurance Services, Inc., & others.[1]

Suffolk. May 9, 2007. - August 3, 2007.

Present: Marshall, C.J., Greaney, Ireland, Spina, & Cowin, JJ.

*Attorney at Law,* Attorney-client relationship, Work product. *Evidence,* Privileged communication. *Privileged communication.*

This court adopted Restatement (Third) of the Law Governing Lawyers § 76(1) (2001) and recognized the common interest doctrine, which prevents waiver of the attorney-client privilege when otherwise privileged communications are disclosed to and shared, in confidence, with an attorney for a third person having a common legal interest, for the purpose of rendering legal advice to the client [612-617]; therefore, in an interlocutory appeal from a discovery order in a civil action requiring the defendant to produce documents that the defendant claimed were protected by the common interest doctrine, this court remanded the matter for a hearing to determine whether the defendant had entered into a joint defense agreement with a codefendant that provided a valid basis to refuse to make such discovery [617-620].

Civil action commenced in the Superior Court Department on May 13, 2002.

Motions to compel discovery and to vacate a discovery order were considered by *Elizabeth M. Fahey,* J.

Leave to prosecute an interlocutory appeal was allowed in the Appeals Court by *Mark V. Green,* J. The Supreme Judicial Court granted an application for direct appellate review.

*John A. Kiernan (Valerie N. Kloecker* with him) for Rapo & Jepsen Insurance Services, Inc.

*Roberta R. Fitzpatrick (Laurence A. Schoen* with her) for Arbella Mutual Insurance Company.

*Owen Gallagher (Kara Larzelere* with him) for the plaintiff.

The following submitted briefs for amici curiae:

[1]Arbella Mutual Insurance Company; Paul Brennan, Jr.; and Insurance Management Associates, Inc.

*John A. Shope & Katherine B. Schmeckpeper* for Boston Bar Association.

*Ben Robbins, Martin J. Newhouse, & Jo Ann Shotwell Kaplan,* for New England Legal Foundation & another.

*William J. Leahy,* Committee for Public Counsel Services, for Committee for Public Counsel Services.

SPINA, J. In this case we formally recognize the longstanding use and validity of joint defense agreements, an exception to waiver of the attorney-client privilege under the common interest doctrine.[2]

This is an interlocutory appeal from discovery orders in a civil action in Superior Court in which the Hanover Insurance Company (Hanover) alleges that the defendants, Rapo & Jepsen Insurance Services, Inc. (Rapo & Jepsen); Arbella Mutual Insurance Company (Arbella); Paul V. Brennan, Jr.; and Insurance Management Associates, Inc., conspired to transfer wrongfully certain high-loss motor vehicle insurance business from Arbella to Hanover. Other related claims are alleged in the multiple count complaint. The essence of the conspiracy claim is that the defendants allegedly arranged for Arbella improperly to provide funding to facilitate the sale of certain motor vehicle insurance agencies assigned to Arbella under G. L. c. 175, § 113H (*C*), known as "exclusive representative producers" (ERPs), to Rapo & Jepsen, an ERP assigned to Hanover under § 113H (*C*). Under the terms of the statute Hanover was required to accept the particularly high-risk motor vehicle insurance business written by the ERPs acquired by Rapo & Jepsen.

Hanover served requests for production of documents on Arbella, and Arbella made the following responses that are the subject of this appeal:

> "*Request Number 7* All documents concerning communications, contracts, agreements or understandings between Rapo & Jepsen or its counsel and Arbella or its counsel between January 1999 and the present.

> "*Response Number 7* Objection. Arbella objects to Request

---

[2]We acknowledge the amicus curiae briefs filed by the Boston Bar Association; New England Legal Foundation and Associated Industries of Massachusetts; and the Committee for Public Counsel Services.

Number 7 to the extent it seeks documents protected by the attorney client privilege, work product protection and/or joint defense privilege. Subject to and without waiving this objection, Arbella states that documents responsive to this request in 1999, 2000 and 2001, the time period relevant to the allegations in the First Amended Complaint, if any, will be produced. Documents, if any, responsive to this request, and created subsequent to the date on which Hanover asserted claims against Arbella and subsequent to Arbella and Rapo & Jepsen Insurance Services, Inc. entering into a joint defense agreement are protected from production by the attorney client privilege, work product protection and/or joint defense privilege and will not be produced.

" . . .

"*Request Number 49* All documents concerning Arbella's payment of any defense costs including attorney's fees by Rapo & Jepsen or any indemnity to be provided by Arbella to Rapo & Jepsen including but not limited to documents concerning any amounts paid by Arbella.

"*Response Number 49* Objection. Arbella objects to Request Number 49 to the extent it seeks production of documents protected by the attorney client privilege, work product protection and/or joint defense privilege and Arbella will not produce those documents."

After Arbella served its responses on Hanover, John Kittel, Arbella's designated deponent pursuant to Mass. R. Civ. P. 30 (b) (6), 365 Mass. 780 (1974), testified that, after Hanover filed its civil action, Arbella agreed to pay and was paying Rapo & Jepsen's attorney's fees. Hanover then filed a motion to compel Arbella to produce the requested documents. Arbella and the other defendants opposed the motion, asserting essentially the same grounds raised by Arbella in its responses to requests nos. 7 and 49 for production of documents. In particular, they argued that, with respect to an agreement to pay attorney's fees, Hanover was entitled to discover only the fact that such an agreement existed and the name of the payor, information that Kittel already had disclosed in his deposition.

They further argued that the dates and amounts of such payments were protected by the attorney-client privilege and the joint defense agreement, and that the detailed billing statements submitted to Rapo & Jepsen by its attorneys and passed along to Arbella for payment are protected by the work product rule and the joint defense agreement.

The judge ordered Arbella to produce all the requested documents.[3] She ruled that "[a] joint defense privilege is not yet recognized in this Commonwealth, especially in these circumstances. Where [Arbella] has the burden of persuasion on this issue and it is not disputed that there is no joint defense agreement in writing, this court declines to accept that privilege." The defendants moved to vacate the order on grounds that oral joint defense agreements are valid, an issue that previously had not been argued. The judge denied the motion. A single justice of the Appeals Court granted leave to the defendants to pursue an interlocutory appeal under G. L. c. 231, § 118. Enforcement of the discovery order was stayed pending appeal. We granted Hanover's petition for direct appellate review.

1. *Common interest doctrine.* The common interest doctrine is an exception to waiver of the attorney-client privilege. It is a doctrine in its developmental stages, and most courts that have considered it have done so in limited circumstances. This has given rise to labels such as "joint defense agreements," "joint defense privilege," and "joint prosecution privilege" that understate the broader principle involved. Broadly stated, the common interest doctrine "extend[s] the attorney-client privilege to any privileged communication shared with another represented party's counsel in a confidential manner for the purpose of furthering a common legal interest." K.T. Schaffzin, An Uncertain Privilege: Why the Common Interest Doctrine Does Not Work and How Uniformity Can Fix It, 15 B.U. Pub. Int. L.J. 49, 86 (2005).

The doctrine traces its origins to *Chahoon* v. *Commonwealth,* 62 Va. (21 Gratt.) 822 (1871), a case that applied the attorney-

---

[3]Hanover contends that the order to produce encompasses documents in addition to those described in requests nos. 7 and 49 for which no joint defense agreement was asserted, which have not been made the subject of this appeal, and which Arbella has failed to produce. Those items are not before us.

client privilege to disclosure of confidential client information among attorneys representing codefendants in a criminal case. The court reasoned that the defendants, who were indicted for conspiracy to defraud an estate and, separately, for forging or uttering the same note of the decedent, could have engaged the same attorney. *Id.* at 841. Had they done so, their communications with their attorney, jointly or severally in reference to their defense, would have been privileged, and the privilege only could have been released by all the defendants. *Id.* The fact that they engaged separate attorneys should make no difference, the court said, "as to their right of communication to each and all of the counsel, and as to the privilege of such communication. . . . They had a right, all the accused and their counsel, to consult together about the case and the defense, and it follows as a necessary consequence, that all the information, derived by any of the counsel from such consultation, is privileged . . . ." *Id.* at 841-842.

The Supreme Court of Minnesota extended the principle to privileged communications shared between counsel for co-defendants asserting common claims in defense of civil actions. *Schmitt* v. *Emery*, 211 Minn. 547, 554 (1942), overruled on other grounds by *Leer* v. *Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 308 N.W.2d 305 (Minn. 1981), cert. denied, 455 U.S. 939 (1982). Thereafter, other courts determined that the principle is not limited to joint defense situations, but also applies to protect privileged communications shared by counsel for coplaintiffs, see *Sedlacek* v. *Morgan Whitney Trading Group, Inc.*, 795 F. Supp. 329, 331 (C.D. Cal. 1992); that it applies to communications shared between a party and a jointly interested nonparty to pending litigation, see *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990); and that it applies to documents shared between a plaintiff's counsel and a defendant's counsel in the same case, see *Visual Scene, Inc.* v. *Pilkington Bros., PLC*, 508 So. 2d 437, 440-442 (Fla. Dist. Ct. App. 1987). Courts have applied the principle to shared work product. See *Haines* v. *Liggett Group Inc.*, 975 F.2d 81, 94 (3d Cir. 1992); *In re Grand Jury Subpoenas*, *supra* at 250; *United States ex rel. Burroughs* v. *De Nardi Corp.*, 167 F.R.D. 680, 685-686 (S.D. Cal. 1996).

Courts have said that the common interest doctrine is not limited to litigation or impending litigation. See *In re Grand Jury Subpoenas, supra* at 249-250; *United States* v. *Schwimmer,* 892 F.2d 237, 244 (2d Cir. 1989); *SCM Corp.* v. *Xerox Corp.,* 70 F.R.D. 508, 513 (D. Conn. 1976) ("Corporations should be encouraged to seek legal advice in planning their affairs to avoid litigation as well as in pursuing it. The timing and setting of the communications are important indicators of the measure of common interest; the shared interest necessary to justify extending the privilege to encompass intercorporate communications appears most clearly in cases of co-defendants and impending litigations but is not necessarily limited to those situations"). This is the view of the American Law Institute. The Restatement (Third) of the Law Governing Lawyers § 76(1) (2000) states:

> "If two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged under §§ 68-72 that relates to the matter is privileged as against third persons. Any such client may invoke the privilege, unless it has been waived by the client who made the communication."

The principle articulated in § 76(1) of the Restatement is consistent with the law in the Commonwealth.[4] The common interest doctrine does not create a new or separate privilege, but prevents waiver of the attorney-client privilege when otherwise privileged communications are disclosed to and shared, in confidence, with an attorney for a third person having a common legal interest for the purpose of rendering legal advice to the client. The rationale behind this doctrine is entirely familiar and commonplace. We begin by reviewing the purpose of the attorney-client privilege.

"The rule which places the seal of secrecy upon communica-

---

[4]Section 76(2) of the Restatement, which states, "[u]nless the clients have agreed otherwise, a communication described in Subsection (1) is not privileged as between clients described in Subsection (1) in a subsequent adverse proceeding between them," also is consistent with the law of the Commonwealth. See *Beacon Oil Co.* v. *Perelis,* 263 Mass. 288, 293 (1928).

tions between client and attorney is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." *In the Matter of a John Doe Grand Jury Investigation*, 408 Mass. 480, 481-482 (1990), quoting *Hunt* v. *Blackburn*, 128 U.S. 464, 470 (1888). The privilege "extends to all communications made to an attorney or counsellor, duly qualified and authorized as such, and applied to by the party in that capacity, with a view to obtain his advice and opinion in matters of law, in relation to his legal rights, duties and obligations, whether with a view to the prosecution or defence of a suit, or other lawful object." *Hatton* v. *Robinson*, 14 Pick. 416, 421 (1833). In the *Hatton* decision, this court stated that the attorney-client privilege is founded on the principle "that so numerous and complex are the laws by which the rights and duties of citizens are governed, so important is it that they should be permitted to avail themselves of the superior skill and learning of those who are sanctioned by the law as its ministers and expounders, both in ascertaining their rights in the country, and maintaining them most safely in courts, without publishing those facts, which they have a right to keep secret, but which must be disclosed to a legal adviser and advocate, to enable him successfully to perform the duties of his office, that the law has considered it the wisest policy to encourage and sanction this confidence, by requiring that on such facts the mouth of the attorney shall be for ever sealed." *Id.* at 422.

The attorney-client privilege is so highly valued that, while it may appear "to frustrate the investigative or fact-finding process . . . [and] create[] an inherent tension with society's need for full and complete disclosure of all relevant evidence during implementation of the judicial process," *In re Grand Jury Investigation*, 723 F.2d 447, 451 (6th Cir. 1983), cert. denied, 467 U.S. 1246 (1984), it is acknowledged that the "social good derived from the proper performance of the functions of lawyers acting for their clients . . . outweigh[s] the harm that may come from the suppression of the evidence." *Commonwealth* v. *Goldman*, 395 Mass. 495, 502, cert. denied, 474 U.S. 906

(1985), quoting *United States* v. *United Shoe Mach. Corp.*, 89 F. Supp. 357, 358 (D. Mass. 1950).

The attorney-client privilege not only protects statements made by the client to the attorney in confidence for the purpose of obtaining legal advice in a particular matter, but also protects such statements made to or shared with necessary agents of the attorney or the client, including experts consulted for the purpose of facilitating the rendition of such advice. See *Commonwealth* v. *Senior*, 433 Mass. 453, 457 (2001); *Cavallaro* v. *United States*, 284 F.3d 236, 247 (1st Cir. 2002). There is no reason to treat confidential client communications differently when shared with an attorney representing a client having a common interest where the purpose for sharing is to provide a free flow of information essential to providing the best available legal services to the client.

Although this court has not had occasion to consider the common interest doctrine or any of its components, there is no doubt that attorneys and their clients have relied on its implicit existence. It is evident from cases such as *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188 (1971), the longest criminal trial in the history of the Commonwealth, that joint defense arrangements have been used in criminal trials in Massachusetts for a substantial period of time. Indeed, in *The Society of Jesus of New England* v. *Commonwealth*, 441 Mass. 662, 666 (2004), we noted without comment that the defendants in that criminal case had entered into a "Joint Defense Agreement." The principle, at least in the litigation context, is incorporated into Proposed Mass. R. Evid. 502 (b) (3).[5] The parties have brought to our attention numerous well-reasoned decisions of judges in

---

[5]Proposed Mass. R. Evid. 502 (b) states:

"General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of the client or between the client and a representative

the Superior Court recognizing the validity of the joint defense privilege in civil cases. The principle is recognized by the United States Court of Appeals for the First Circuit. See *United States* v. *Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 28 (1st Cir. 1989). The First Circuit also recognizes that the same principle applies to protect an attorney's shared work product. *In re Grand Jury Subpoena*, 274 F.3d 563, 574-575 (1st Cir. 2001). Confidentiality of consultations between parties to business transactions with their respective attorneys is no less essential or less common than in the litigation context. For these reasons, we adopt the principle of Restatement (Third) of the Law Governing Lawyers § 76(1) as the law of the Commonwealth.

2. *The order.* Hanover contends that the order in this case should be upheld for several reasons. First, it argues that the common interest doctrine cannot be applied without the client's knowledge, and in this case there is no evidence that any defendant was aware that their respective counsel purportedly entered into a joint defense agreement.[6] Hanover cites no case law to support its argument. While it is certainly preferable to secure the client's consent before sharing a privileged communication in the event a joint defense agreement is found not to exist, we do not think a client's knowledge or express consent essential to create such an agreement. The attorney-client privilege belongs to the client and can be waived only by the client, see *Foster* v. *Hall*, 12 Pick. 89, 92-93 (1831), but the attorney may disclose client information "impliedly authorized in order to carry out the representation." S.J.C. Rule 3:07, Mass. R. Prof. C. 1.6 (a), 426 Mass. 1322 (1998). See *id.* at comment [7] ("A lawyer is authorized to make disclosures about a client when appropriate in carrying out the representation, except to the extent that the client's instructions or special circumstances limit that authority"). A conference with counsel for a third party having a common legal interest in a matter with the client, during which the attorneys share privileged client communications for the purpose of providing the best legal services to their

of the client, or (5) among lawyers and their representatives representing the same client."

[6]It appears that it can only be said that defendants Brennan and Insurance Management Associates, Inc., had not given prior consent.

respective clients in the matter at hand, constitutes an effective assertion of the privilege under the common interest doctrine.

Second, Hanover argues that because there was no written joint defense agreement, the shared communications were not privileged. Because the common interest doctrine depends entirely on communications that fall within the attorney-client privilege and is an exception to waiver of the privilege, and because the attorney-client privilege does not depend on a writing, the common interest doctrine does not require a writing. See Restatement (Third) of the Law Governing Lawyers § 76(1) comment c (2000) ("formality is not required"). Although a writing may be evidence of the existence of confidential communications protected by the attorney-client privilege, it does not give rise to the privilege. The common law, as well as our rules of professional conduct, are the wellspring of the privilege. See Mass. R. Prof. C. 1.6, *supra*.

Hanover's third claim is that Arbella and Rapo & Jepsen do not share a common legal interest sufficient to support application of the common interest doctrine. Hanover suggests that the requisite interests must be identical. We disagree. Restatement (Third) of the Law Governing Lawyers § 76(1) comment e (2000) states that "[t]he interests of the separately represented clients need not be entirely congruent." Clients rarely will have identical interests. See *Eisenberg* v. *Gagnon*, 766 F.2d 770, 787-788 (3d Cir.), cert. denied, 474 U.S. 946 (1985) ("Communications to an attorney to establish a common defense strategy are privileged even though the attorney represents another client with some adverse interests"); *Visual Scene, Inc.* v. *Pilkington Bros., PLC*, 508 So. 2d 437, 441 (Fla. Dist. Ct. App. 1987). One commentator has suggested that a requirement of identical interests would "stifle[] the free flow of communication that the attorney-client privilege is intended to promote." K.T. Schaffzin, An Uncertain Privilege: Why the Common Interest Doctrine Does Not Work and How Uniformity Can Fix It, 15 B.U. Pub. Int. L.J. 49, 73 (2005). She proposes that "when courts consider whether parties share a common legal interest, the determination should focus on the . . . general purpose for which [the communication] is shared, rather than on the relationship of the parties. Specifically, . . . courts should deem an interest 'com-

mon' where two or more parties share a sufficiently similar interest and attempt to promote that interest by sharing a privileged communication." *Id.* We support this more expansive approach as being more consonant with the purpose of the attorney-client privilege.

Where defendants allege a common interest that is no more than a joint effort to establish a common litigation defense strategy, the requisite common interest is among the easiest to establish. Such defendants need only prove that "(1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived." *United States* v. *Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 28 (1st Cir. 1989), quoting *In re Bevill, Bresler & Schulman Asset Mgt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986). The judge here did not make any findings on this question. The matter must be remanded for findings as to whether the alleged privileged materials fall within the common interest doctrine for purposes of refusing to make discovery under Hanover's requests nos. 7 and 49 for production of documents.

Fourth, and last, Hanover argues that the detailed bills for legal services rendered to Rapo & Jepsen, and Arbella's checks in payment of those bills, are not protected by the attorney-client privilege. "It is well recognized . . . that the identity of an attorney's client and the source of payment for legal fees are not normally protected by the attorney-client privilege." *In re Grand Jury Subpoena*, 925 F. Supp. 849, 855 (D. Mass. 1995), quoting *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1488 (10th Cir. 1990). However, details in billing statements may reveal confidential communications between client and attorney or the attorney's mental impressions or legal theories, that is, his work product, which is protected and generally not open to discovery. See *Matter of Witnesses Before Special March 1980 Grand Jury*, 729 F.2d 489, 495 (7th Cir. 1984). Rapo & Jepsen contend that, consistent with their practice, the billing statements contain protected work product. A party asserting the attorney-client privilege (or protected work product) has the burden to show that the privilege applies. See *In the Matter of the Reorganization of Elec. Mut. Liab. Ins. Co. Ltd. (Bermuda)*,

425 Mass. 419, 421 (1997). The judge made no findings on the question and we are unable to decide the issue on the record before us. Although it is likely that the billings contain work product, this question also must be remanded for a hearing. Assuming the work product rule applies, Hanover must demonstrate that it has a substantial need for the work product material and that it is unable to obtain the substantial equivalent by other means. See Mass. R. Civ. P. 26 (b) (3), 365 Mass. 772 (1974). Hanover further contends that any privilege was waived by disclosure to Arbella, a third party. If the parties entered into a joint defense agreement, it may protect this material. These issues will need to be resolved at a hearing.

3. *Conclusion.* The common interest doctrine is recognized in the Commonwealth. The narrative portions of Rapo & Jepsen's legal bills, submitted to Arbella for payment, may contain privileged material that is protected by a joint defense agreement. The order compelling discovery is vacated to the extent it requires production of documents as to Hanover's requests nos. 7 and 49, and the matter is remanded for a hearing consistent with this opinion to determine whether Arbella and Rapo & Jepsen entered into a joint defense agreement that provides a valid basis to refuse to make discovery under Hanover's requests nos. 7 and 49 for production of documents. The order compelling discovery is affirmed in all other respects.

*So ordered.*