SUPERIOR COURT 
 
 W. HUGO VAN VUUREN v. LOWENSTEIN SANDLER LLP AND MARIE DEFALCO

 
 Docket:
 2184CV01663-BLS2
 
 
 Dates:
 June 7, 2024
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER ALLOWING DEFENDANTS’ MOTION TO COMPEL THE RETURN OF INADVERTENTLY DISCLOSED PRIVILEGED EMAILS AND DENYING PLAINTIFF’S CROSS-MOTION TO STRIKE PART OF DEFENDANTS’ REPLY MATERIALS
 
 

 Hugo Van Vuuren and Patrick Chung co-founded a venture capital fund that came to known as Xfund. Mr. Van Vuuren is a South African citizen; he was working in the United States for Xfund under an O-1 visa. Van Vuuren contends that, after he and Chung had a falling out, the law firm Lowenstein Sandler LLP and Marie DeFalco (a Lowenstein partner) helped Chung to freeze Van Vuuren out of Xfund in part by providing or participating in providing false information that caused the United States Citizenship and Immigration Services (“USCIS”) to revoke Van Vuuren’s visa.
During discovery in this case, Lowenstein produced two email exchanges between Mr. Chung and Laura Murray-Tjan. Only later did Lowenstein learn that Ms. Murray-Tjan is an immigration attorney and conclude that the emails are privileged. Lowenstein asked Mr. Van Vuuren to return these emails, on the ground that they are protected by the attorney-client privilege and were inadvertently produced. Van Vuuren refused to do so. Lowenstein and DeFalco seek an order compelling Van Vuuren to return these documents.
The Court has carefully reviewed the record evidence submitted by the parties and conducted an in camera review of the emails at issue.
The Court will allow the motion to compel the return of the contested emails because it finds that these communications are protected by the attorney-client privilege, Chung did nothing to waive the privilege, and Van Vuuren has not established that the crime-fraud exception to this privilege applies here.
On this last point, Van Vuuren has not shown that Chung committed a crime or fraud by knowingly or recklessly making false statements. Chung told a United States consular officer that Van Vuuren had forged Chung’s signature
 
                                                            -1-
 
on visa application documents. Though Chung had authorized Van Vuuren to sign on his behalf, Van Vuuren included fabrications and misrepresentations in the documents to which he affixed Chung’s signature, without disclosing that to Chung before filing the documents. Chung therefore had good reason to believe that Van Vuuren committed what can fairly be described as forgery.
The Court will also deny Van Vuuren’s motion to strike arguments in Lowenstein’s reply memorandum about the crime-fraud exception, to strike a new affidavit by Attorney Murray-Tjan about her attorney-client relationship with Chung, and to strike any discussion of that affidavit.
1. Background. The following background information regarding Van Vuuren’s allegations against Lowenstein and DeFalco, and about the context in which Chung and Murray-Tjan exchanged the disputed emails, is relevant to the Court’s findings and rulings as to whether these communications are protected by the attorney-client privilege and whether the crime-fraud exception applies here.
Van Vuuren alleges that Attorney DeFalco sent a misleading letter in March 2016 to notify USCIS that Xfund had terminated Van Vuuren’s employment, without noting that Chung’s authority to take that action was in dispute, and without letting Van Vuuren know about the letter. He contends that DeFalco was trying to trigger automatic revocation of Van Vuuren’s O-1 visa. He further alleges that DeFalco submitted a second misleading letter to USCIS in May 2016 making the same points, this time correctly identifying Van Vuuren’s employer, and once again withholding information that Van Vuuren was challenging his termination and once again not copying Van Vuuren.
Van Vuuren contends that as a result of these letters USCIS revoked his visa in June 2016. Van Vuuren also claims that Lowenstein, DeFalco, and Chung knew about the visa revocation but withheld that information from Van Vuuren.
Van Vuuren says that in August 2016 he travelled to South Africa to visit family, and that when he returned to the United States on September 3, 2016, he was denied re-entry. Later that day, a special agent from Homeland Security Investigations, within the United States Department of Homeland Security, emailed Chung and asked to speak with him; Chung quickly agreed to do so, and thanked the agent for her “continued help.”
On September 13, 2016, Chung sent an email, attaching a letter and supporting materials, to the Consular Chief of the United States Consulate in Cape Town,
 
                                                            -2-
 
South Africa. Chung said in this letter that he was writing to alert the chief to “malfeasance” by Van Vuuren; he asserted that Van Vuuren had “submitted falsified documents in order to procure his visa” and that he had done so “without our consent or knowledge.” Chung copied DeFalco on the email.
Chung enclosed with this letter copies of all materials that Van Vuuren (through counsel) had submitted to USCIS in December 2013 and January 2014, in support of the application by Experiment Fund LLC (which Chung says later became known as Xfund) seeking an O-1 visa for Van Vuuren. Xfund was Van Vuuren’s sponsoring employer, and was seeking the visa on his behalf.
Chung added notations to the visa application materials asserting that “all instances of my signature” in both submissions “were forged,” and that Van Vuuren’s filed these submission “without my review or consent.”
Van Vuuren contends that these statements were false. Van Vuuren asserts that in late November 2013 Chung had approved the visa application submission and authorized Van Vuuren to sign Chung’s name to a supporting letter that was part of his original submission to USCIS. He also asserts that in late January 2014 Chung similarly authorized Van Vuuren to sign Chung’s name to a supplemental supporting letter that he also submitted to USCIS.
As discussed below, however, Van Vuuren has focused on only part of what Chung asserted in his September 2016 letter to the Consulate. Chung also told the Consulate that Van Vuuren’s filings and supporting materials “contain numerous inaccuracies and false statements,” and that Van Vuuren had printed Chung’s supporting letters on “falsified” letterhead that “makes inappropriate and unapproved use of a Harvard University crest and name.”
Van Vuuren contends that, as a result of Chung’s letter and the efforts of Lowenstein and DeFalco, the Consulate “permanently banned” him from the United States. However, in April 2018 the Consulate informed Van Vuuren that it had “determined that the new evidence you provided indicates that you did not have the intent to commit fraud” when he “signed the letter use for [the] O1 petition,” the Consulate therefore removed its prior finding that Van Vuuren was ineligible for any visa, and it was going to issue him a B1/B2 visa.
2. Denial of Motion to Strike. The Court agrees with Van Vuuren that Lowenstein could have and therefore should have included its crime-fraud arguments in and provided the Murray-Tjan affidavit with its initial memorandum. Lowenstein was aware when it served its motion to compel that
 
                                                            -3-
 
Van Vuuren contended that any attorney-client privilege is negated by the crime-fraud exception. It also know that it would have to prove that Chung had formed an attorney-client relationship with Murray-Tjan.
Instead, Lowenstein waited to make these arguments in and submit this affidavit with its reply memorandum, after Van Vuuren had served his written opposition.
But Van Vuuren suffered no prejudice as a result. He fully addressed the crime- fraud exception in his written opposition. He also had ample opportunity to address that issue, as well as Ms. Murray-Tjan’s affidavit, during oral argument on Lowenstein’s motion to compel. Van Vuuren chose not to seek leave to submit a sur-reply to further address these issues or this affidavit. He has not identified any legal or factual issue that he was unable to raise, discuss, or explain in full.
Though Van Vuuren asks for a chance to conduct further discovery regarding the new affidavit, the Court finds that Van Vuuren makes no showing that the further discovery that Van Vuuren alludes to in a footnote is reasonably calculated to lead to the discovery of admissible evidence regarding whether Murray-Tjan and Chung had an attorney-client relationship. The Court will therefore exercise its discretion not to permit Van Vuuren to conduct discovery on this narrow issue.
Since Van Vuuren has not shown that he was unfairly prejudiced by the arguments or affidavit that he now challenges, the Court will also exercise its broad discretion to deny the motion to strike. See Teamsters Local Union No. 404 v. Secretary of Admin. & Finance, 434 Mass. 651, 661 n.12 (2001) (Superior Court judge did not abuse discretion in denying plaintiff’s motion to strike late-filed affidavit, submitted in support of motion for summary judgment, because admission of affidavit without permitting examination of affiant at a deposition caused no unfair prejudice); Commonwealth v. Nadal-Ginard, 42 Mass. App. Ct. 1, 13 (1997) (denying motion to strike portions of appellate brief because party suffered no prejudice).
3. Allowance of Motion to Compel. Lowenstein seeks to compel the return of two email exchanges between Patrick Chung and Attorney Laura Murray-Tjan. The first of these emails was sent by Murray-Tjan to Chung late in the evening of September 3, 2016, after Van Vuuren had been barred from re-entering the United States. The second email exchange was sent back-and-forth between
 
                                                            -4-
 
Chung and Murray-Tjan on September 12, 2016. In that exchange, Chung sought and Murray-Tjan provided advice about a draft of Chung’s September 13 letter to the Consulate.
The Court finds that these emails are protected by the attorney-client privilege and that Van Vuuren must therefore return them.
3.1. The Contested Emails Are Privileged. The Court credits the two Chung affidavits and the Murray-Tjan affidavit that Lowenstein submitted in support of its motion to compel. It has also considered the full evidentiary record submitted by the parties and reviewed the contested emails in camera, with the agreement of all parties.
Based on that evidence, the Court finds that Murray-Tjan and Chung had an attorney-client relationship at the time that they exchanged these emails, that the emails were seeking or conveying confidential legal advice, and that the emails are therefore privileged unless Chung somehow waived the privilege or Van Vuuren can show that the crime-fraud exception to that privilege applies.
3.1.1. Attorney-Client Relationship. The communications between Murray- Tjan and Chung in September 2016 created an attorney-client relationship.
An attorney-client relationship may be implied from the conduct of the parties. See Page v. Frazier, 388 Mass. 55, 62 (1983). An implied attorney-client relationship is created if, and only if: “(1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney’s professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance.” DaRoza v. Arter, 416 Mass. 377, 381 (1993), quoting DeVaux v. American Home Assurance Co., 387 Mass. 817–818 (1983). “All three requirements of this test must be met to establish the relationship.” Id.
“Such a relationship may be established through preliminary consultations, even though the attorney is never formally retained and the client pays no fee.” Bays v. Theran, 418 Mass. 685, 690 (1994). “[W]hether a client has paid an attorney ‘a fee is not conclusive as to the existence of [an] attorney client relationship.’ ” Id., quoting Mailer v. Mailer, 390 Mass. 371, 374 (1983).
The Court finds that Chung sought legal advice and assistance from Murray- Tjan concerning matters within Murray-Tjan’s professional competence as an immigration lawyer, and that Murray-Tjan provided the advice and assistance that Chung had asked for. Nothing more is required to establish that Chung
 
                                                            -5-
 
had entered into an attorney-client relationship with Murray-Tjan. See Bays, supra, at 690–691.
3.1.2. Privileged Communications. It follows that the contested emails are privileged, unless the attorney-client privilege was somehow waived or the crime-fraud exception applies.
A party to civil litigation is not entitled to obtain or learn about confidential communications that are protected by the attorney-client privilege. See McCarthy v. Slade Assocs., Inc., 463 Mass. 181, 182 (2012). This privilege “protects communications between a client and an attorney that are made in confidence for the purpose of giving or obtaining legal advice.” Id. at 190. “The privilege covers the flow of confidential communications in both directions – from the attorney to the client and from the client to the attorney[.]” Attorney General v. Facebook, Inc., 487 Mass. 109, 121 (2021). That is, it covers not only confidential communications conveying legal advice from attorney to client, but also confidential communications conveying questions or information between client and attorney, in either direction, to obtain or inform legal advice by the lawyer. McCarthy, supra, at 190 n.21.
Chung’s confidential request that Murray-Tjan review a draft of his letter to the Consulate, and their email exchange about that letter, are privileged. See In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983, 731 F.2d 1032, 1037 (2d Cir. 1984); Kobluk v. University of Minnesota, 574 N.W2.2d 436, 442–445 (Minn. 1998) (preliminary drafts of letter denying tenure to plaintiff, sent by university provost to counsel for review, were privileged).
The attorney-client privilege protects confidential communications, not confidential information. See Commissioner of Revenue v. Comcast Corp., 453 Mass. 293, 305 (2009); see also Robinson v. Commonwealth, 399 Mass. 131, 135 (1987) (“That a client tells a friend what he also tells his attorney in no way undermines the attorney-client privilege as to what was communicated to the attorney.”) (dictum). The test of confidentiality is whether a communication that seeks, conveys, or is intended to inform legal advice was made with an expectation that the communication itself will not be divulged, not whether the communication conveyed confidential information. See Comcast, supra (rejecting argument “that the privilege applies only where the underlying client information that is the subject of the communication is confidential”).
 
                                                            -6-
 
It follows that a confidential attorney-client communication about a draft letter to a third party will remain privileged (barring waiver or application of the crime-fraud exception) even after the letter is put into final form and sent out. See Kobluk, 574 N.W2.2d at 442–445; In re Grand Jury Subpoena, 731 F.2d at 1037; Alexander v. F.B.I., 198 F.R.D. 306, 312 (D.D.C. 2000).
3.2. Chung Did Not Waive the Privilege. The Court finds that Chung did not waive his attorney-client privilege with respect to the contested emails.
3.2.1. Sharing Emails with Xfund’s Counsel. First, Chung did not waive the privilege by sharing these emails with counsel for Xfund.
In May 2016, Van Vuuren sued both Chung and Xfund in California state court. Lowenstein, together with local counsel in California, represented Chung and Xfund in defending against Van Vuuren’s claims. Van Vuuren asserted, among other things, that Chung had defamed him by stating that Van Vuuren had forged unauthorized signatures on immigration papers.
Van Vuuren’s lawsuit against Chung and Xfund was still pending when Chung communicated with Murray-Tjan, and then shared those communications with Lowenstein attorneys who were representing him and Xfund in the California litigation.[1]
Chung quickly shared with Xfund’s litigation counsel (Lowenstein) both of his email exchanges with Attorney Murray-Tjan. One day after Chung received the September 3, 2016, email from Murray-Tjan, he forwarded it to attorneys at Lowenstein and to an attorney from GCA Partners, LLC, who was representing Chung. And he forwarded his September 12, 2016, email exchange with Murray-Tjan to Lowenstein attorneys later that day.
The Court finds that, when Chung shared these emails with Xfund’s counsel, Chung and Xfund also shared a common legal interest in their dispute with Van Vuuren, including about whether Van Vuuren made misrepresentations to USCIS when applying for a visa sponsored by Xfund.
Confidential communications among Lowenstein (representing Xfund and Chung), Chung (Xfund’s managing partner), and Murray-Tjan and GCA (representing Chung) about those disputes are protected by the attorney-client privilege under the “common interest doctrine.” See Hanover Ins. Co. v. Rapo &
 
--------------------------------------------
 
[1]        Chung represents that the California action was dismissed with prejudice in March 2017; Van Vuuren does not disagree.
 
                                                            -7-
 
Jepsen Ins. Services, Inc., 449 Mass. 609, 614–619 (2007). It does not matter that the interests of Chung and Xfund were not identical and may have differed in some respects. Id. at 618–619. Van Vuuren’s unsupported argument to the contrary, which it makes in passing in a footnote, is without merit.
3.2.2. No At-Issue Waiver.  Second, Chung did not implicitly waive his attorney-client privilege by putting his communications with Murray-Tjan at issue during the California lawsuit brought by Van Vuuren.
“[A] litigant may implicitly waive the attorney-client privilege, at least partly, by injecting … claims or defenses into a case” that put at issue the substance of otherwise confidential communications among counsel and clients. Clair v. Clair, 464 Mass. 205, 218–219 (2013) , quoting Darius v. Boston, 433 Mass. 274, 277 (2001). “[A] party may not press a claim or defense to which privileged communications are integral while simultaneously refusing to produce those communications if they are unavailable from other sources.” Brauner v. Valley, 101 Mass. App. Ct. 61, 70 (2022).
Such a waiver is limited to “what has been put at issue” in the case; it does not constitute “a blanket waiver of the entire  attorney-client  privilege.”  Clair, 464 Mass. at 219, quoting Darius, 433 Mass. at 283. In addition, “there can be no ‘at issue’ waiver unless it is shown that the privileged information sought to be discovered is not available from any other source.” Global Investors Agent Corp. v. National Fire Ins. Co. of Hartford, 76 Mass. App. Ct. 812, 817–818 (2010), quoting Darius, supra, at 284.
Van Vuuren contends that Chung made an implicit at-issue waiver of his communications with Murray-Tjan because he “expressly relied on the advice of counsel in defending against Van Vuuren’s claims” in the California litigation. Van Vuuren points to a declaration that Chung signed and submitted to the California court in which Chung said that he told USCIS about Van Vuuren’s alleged forging of Chung’s signature “on the advice of fund counsel.”
This argument is without merit for three, independent reasons.
First, Chung could not have been referring to the Murray-Tjan emails in his California declaration because those communications had not yet taken place. Chung signed his California declaration on May 26, 2016. The contested email communications between Chung and Murray-Tjan did not take place until September 2016, months later. Van Vuuren’s assertion that Chung was putting future emails at issue by submitting his declaration in the California lawsuit
 
                                                            -8-
 
makes no sense. At most Chung put at issue in the California proceeding the advice of counsel he had received as of May 2016, not what he may have been told by an attorney later on. See Darius, 433 Mass. at 279–280.
Second, Chung’s statement that he was acting “on the advice of fund counsel” could not have been a reference to Murray-Tjan, even apart from timing, because she was never counsel for Xfund. Chung’s statement was instead a reference to Lowenstein, which represented Xfund. Even if Chung’s declaration put at issue communications with Lowenstein, it did not inject advice from Murray-Tjan as a defense in the California action and therefore did not implicitly waive the attorney-client privilege as to those emails.
Third, whatever the scope of Chung’s allegedly implied waiver in a civil action in another State that ended more than seven years ago, that would not constitute an implicit waiver of Chung’s attorney-client privilege with respect to this case. Van Vuuren cites no authority suggesting that an at-issue waiver of privilege in one lawsuit constitutes a permanent waiver of relevant attorney- client communications for all time and for all purposes. Since Chung is not relying on “advice of counsel” for any claim or defense in this action, he has not put any communications with counsel at issue and has not implicitly waived his attorney-client privilege in this case. Cf. Darius, 433 Mass. at 280 n.7.
In sum, Chung never raised any claim or defense that put the substance of his communications with Murray-Tjan at issue either during the prior California litigation or in this case. He therefore has not implicitly waived his privileged as to the contest emails for purposes of this case.
3.2.3. Inadvertent Disclosure. Third, Chung did not waive his attorney-client privilege when Lowenstein’s counsel inadvertently produced the contested emails to Van Vuuren’s counsel without realizing that they were privileged.
Since the privilege belongs to the client, it is not waived if the client takes reasonable precautions to keep a communication with their attorney confidential, but their lawyer mistakenly discloses it to opposing counsel. See In the Matter of Reorganization of Electric Mut. Liab. Ins. Co. Ltd., 425 Mass. 419, 422–425 (1997) (“EMLICO”); Vigor Works, LLC v. White Skanska, JV, 35 Mass. L. Rptr. 425, 2019 WL 1027891, at *3 (Mass. Super. Feb. 12, 2019) (Kaplan, J.).
The attorney-client privilege “belongs only to the client, and therefore can be waived only by the client.” Matter of John Doe Grand Jury Investigation, 408 Mass.
 
                                                            -9-
 
480, 483 (1990). The privilege that protects the contested emails therefore belongs to and may only be waived by Chung.
A party should be allowed to recover a privileged document if “the disclosure was inadvertent,” “the holder of the privilege … took reasonable steps to prevent disclosure,” and “the holder promptly took reasonable steps to rectify the error.” See Mass. R. Civ. P. 26(b)(5)(B) (governing mistaken production of privileged materials in discovery); see also Mass. Guide to Evid. § 523(c)(2) (under EMLICO, similar standard applies outside context of discovery). The point of this rule, as adopted in EMLICO, “is to protect clients’ confidences from their lawyers’ human errors.” Carmody v. Board of Trustees of Univ. of Illinois, 893 F.3d 397, 406 (7th Cir. 2018) (discussing the very similar Fed. R. Evid. 502(b)).
The Court finds that disclosure of the emails between Mr. Chung and Attorney Murray-Tjan to Van Vuuren was inadvertent, that Chung and Lowenstein took reasonable steps to keep those communications confidential, and that defense counsel promptly took reasonable steps to fix their accidental use and disclosure of these documents.
The Court finds that the disclosure was inadvertent. The Court credits representations by defense counsel that they did not realize that the contested emails were between Chung and an attorney when they produced them. Murray-Tjan was using what appeared to be a personal Gmail account and did not sign her emails or say anything that clearly suggested she was an attorney.
It also finds that Chung took reasonable steps to keep the emails confidential. He shared them only with his lawyers and with counsel for Lowenstein.
And the Court further finds that defense counsel promptly took reasonable steps to fix their error. As soon as they realized that these emails are privileged, Lowenstein’s counsel immediately contacted plaintiff’s counsel and asked that the emails be returned. When Van Vuuren’s counsel declined to do so, Lowenstein’s counsel quickly prepared and served a motion to compel return of the documents. Nothing more was required to preserve Chung’s right to assert its privilege.
3.3. The Crime-Fraud Exception Does Not Apply. The Court also finds that Van Vuuren has not established that Chung’s communications with Murray- Tjan helped to further any crime or fraud, and that the crime-fraud exception to the attorney-client privilege therefore does not apply here.
 
                                                            -10-
 
3.3.1. Legal Background. “Under the crime-fraud exception, the attorney-client privilege does not extend to communications ‘if the communication seeks assistance in or furtherance of future criminal conduct.’ ” In re Grand Jury Investigation, 437 Mass. 340, 342 (2002), quoting Purcell v. District Attorney for the Suffolk Dist., 424 Mass. 109, 114 (1997). In other words, the privilege does not apply “[i]f the services of the lawyer were sought or obtained to commit or to plan to commit what the client knew or reasonably should have known was a crime or fraud.” Mass. Guide Evid. § 502(d)(1); accord Purcell, supra, at 112 (quoting with approval similar wording from Proposed Massachusetts Rule of Evidence 502(d)(1)).
The burden is on Van Vuuren, as the party seeking to invoke the crime-fraud exception, to prove by a preponderance of the evidence that the exception applies. Purcell, supra, at 113.
“This requires a showing that (1) the client was engaged in or planning criminal or fraudulent activity when the privileged communications took place, and (2) ‘the communications were intended by the client to facilitate or conceal the criminal conduct or fraudulent activity.’ ” Wilson v. Sentry Ins., Mass. App. Ct. No. 21-P-399, 2022 WL 569782, at *3 (Mass. App. Ct. Feb. 25, 2022) (Rule 23.0 decision), quoting United States v. Gorski, 807 F.3d 451, 460 (1st Cir. 2015). “[T]he crime-fraud exception focuses not on the attorney’s conduct but on whether the client sought the services of a lawyer to enable or aid someone to commit or plan to commit what the client knew or should have known to be a crime.” Matter of Ellis, 425 Mass. 332, 336 (1997).
3.3.2. Analysis of Crime-Fraud Issues. Van Vuuren has not shown that Chung knowingly and willfully made false or fraudulent statements to the Consulate, and therefore has not met his burden of showing that the crime-fraud exception applies. “ ’The crime-fraud exception is a narrow one’ and, ‘without evidence of a crime or fraud, the crime-fraud exception is inapplicable’ ” (cleaned up). Buster v. George W. Moore, Inc. 438 Mass. 635, 654–655 (2003), quoting In re Grand Jury Investigation, supra, at 357 & 361.
Federal law makes it a crime to “knowingly and willfully” make “any materially false, fictitious, or fraudulent statement or representation” in connection with “any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States,” with certain explicit exceptions that are not relevant here. See 18 U.S.C. § 1001(a)(3).
 
                                                            -11-
 
Fraud involves a “misrepresentation of an existing fact made with knowledge of the falsity of the misrepresentation or with reckless disregard of the actual facts.” Christian v. Mooney, 400 Mass. 753, 764 (1987). In other words, it involves either an intent to deceive or recklessness as to whether a statement is false.
Van Vuuren contends that Chung intentionally made false statements to the Consulate when he asserted that Van Vuuren forged Chung’s signatures on the visa application papers that he caused to be submitted to USCIS in December 2013 and January 2014. Van Vuuren points to a late November 2013 text chain in which Chung told Van Vuuren “I hereby give you full authority to sign my name” to the supporting letter that Van Vuuren had dropped off a day earlier. He also relies on a late January 2014 email in which Van Vuuren asks whether he may sign two additional forms on Chung’s behalf; Van Vuuren states under oath that the two of them then spoke by telephone and Chung again authorized Van Vuuren to sign on his behalf.
Based on this evidence, Van Vuuren argues that “Chung knew that his statements that Van Vuuren forged Chung’s signature and that he never received or approved the visa filing were false.”
For the purpose of deciding Lowenstein’s motion to compel the return of the contested emails, the Court credits these representations by Van Vuuren that Chung told him to sign letters and other documents relating to Van Vuuren’s visa application on Chung’s behalf.
But that is not the end of the story.
Chung swore under oath in his May 2016 declaration in the California lawsuit that Van Vuuren printed the two letters of support for his visa application from Chung on fictitious letterhead of a purported joint venture between The Experiment Fund at Harvard (which later became known as Xfund) and the Harvard School of Engineering & Applied Sciences, using the Harvard University crest and the address of the School of Engineering’s Maxwell Dworkin building. Chung explained that:
The letterhead used for these documents is a fabrication, as there was no authorized letterhead suggesting this type of affiliation between the Experiment Fund and the Harvard School of Engineering & Applied Sciences. Quite to the contrary, the Experiment Fund was explicitly prohibited from using Harvard’s name or its crests in this misleading manner.
 
                                                            -12-
 
In addition, Chung testified (in his declaration) that Van Vuuren misrepresented key facts in the visa application and in the supporting letters to which he signed Chung’s name. According to Chung, Van Vuuren:
o misrepresented that he was a “Managing Director” of Xfund, when in fact he worked for the company as a consultant;
o inflated his salary by saying that Xfund paid him $200,000 per year, when he was actually being paid $125,000 per year; and
o misrepresented Xfund’s assets (Van Vuuren had said that Xfund had a $10 million capitalization).
And Chung also testified that he did not see the letters and applications that Van Vuuren signed on his behalf until after they were submitted.
These are the same points that Chung made in his September 2016 submission to the Consulate. They are the reason why Chung wrote in his letter to the Consulate that, “Without our consent or knowledge, Mr. Van Vuuren submitted falsified documents in order to procure his visa.”
Significantly, Van Vuuren does not dispute that he used this fabricated and unauthorized letterhead and included these false statements in the visa application and supporting letters to which Van Vuuren signed Chung’s name. He also does not contend that Chung was aware that Van Vuuren would be using misleading letterhead and including factual misrepresentations in these materials when Chung authorized Van Vuuren to sign his name.
Based on this evidence, the Court finds that Van Vuuren has not met his burden of proving by a preponderance of the evidence that Chung committed a crime or engaged in fraud by knowingly or even recklessly making false statements to the Consulate.
That Chung authorized Van Vuuren to sign the O-1 visa application and supporting letters for him did not constitute authorization to sign Chung’s name to letters printed on fabricated letterhead and to documents containing misrepresentations of fact. Considering the circumstances as a whole, the Court finds that it was reasonable in 2016 for Chung to characterize his signatures on the visa application materials as forgeries, because Chung had not authorized Van Vuuren to sign Chung’s name to documents containing fabrications or misrepresentations.
 
                                                            -13-
 
Van Vuuren was acting as Chung’s agent in signing Chung’s name to the visa application materials that Xfund was submitted on Van Vuuren’s behalf. See generally Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 742-743 (2000) (principal may create agency relationship by giving someone actual or apparent authority to act for them).
Van Vuuren therefore owed to Chung “obligations of undivided loyalty and utmost good faith” in acting on Chung’s behalf; that included a “duty to make full disclosure” to Chung “of all material facts relevant to the agency.” Gagnon v. Coombs, 39 Mass. App. Ct. 144, 156 (19950. “The principal has a right to be informed of all material facts known to the agent in reference to the transaction in which he is acting for his principal, and good faith requires a disclosure of such facts by the agent.” Spritz v. Brockton Sav. Bank, 305 Mass. 170, 172 (1940).
By signing Chung’s name without first telling him about the fabrications and misrepresentations in the visa application and supporting letters, it appears that Van Vuuren violated these obligations and was doing something that Chung had never authorized. Chung had good reason to believe that what Van Vuuren did could fairly be characterized as forgery. Cf. Commonwealth v. Zaleski, 3 Mass. App. Ct. 538, 542 (1975) (forgery includes falsely inducing someone to put signature on an instrument for purpose they did not intend).
In sum, Van Vuuren has not established on this record that Chung engaged in intentional fraud or committed a crime by knowingly and willfully making a false statement when he said that Van Vuuren had forged his signature.
ORDERS
Defendants’ motion to compel the return of inadvertently disclosed privileged documents (doc. no. 47) is allowed. Plaintiff shall promptly return, not retain any copy of, and not use in any way the emails at issue in this motion.
Plaintiff’s cross-motion to strike portions of Defendants’ reply memorandum (doc. no. 51) is denied.